CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
8/20/2018
JULIA C. DUDLEY, CLERK
BY: s/ SUSAN MOODY
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NICOLE S.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. 7:17-cv-256 |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | By: Hon. Robert S. Ballou |
| **Acting Commissioner of Social Security,** | ) | United States Magistrate Judge |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Nicole S. ("Nicole") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Nicole alleges that the Administrative Law Judge ("ALJ"): (1) failed to adequately account for her mental impairments in her residual functional capacity ("RFC"); (2) failed to perform a function-by-function analysis of her physical impairments when developing her RFC; and (3) improperly discounted her "credibility." I conclude that the ALJ failed to adequately explain the basis for Nicole's mental RFC. Accordingly, I **RECOMMEND GRANTING** Nicole's Motion for Summary Judgment (Dkt. 14), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 16), and **REMANDING** the case for further consideration by the ALJ.

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Nicole failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin,826 F.3d. 176 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the Court of Appeals remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

here because the ALJs opinion leaves the court to guess at how he reached his conclusions regarding Nicole's RFC.

## CLAIM HISTORY

Nicole protectively filed for SSI on February 4, 2013, claiming that her disability began on September 15, 2004.[3] R. 305. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 215, 227. On January 12, 2016, ALJ Geraldine H. Page held an administrative hearing to consider Nicole's disability claim. R. 167–204. Nicole was represented by an attorney at the hearing, which included testimony from Nicole and vocational expert Robert Jackson. Id.

On March 21, 2016, the ALJ entered her decision analyzing Nicole's claim under the familiar five-step process,[4] and denying Nicole's claim for disability. R. 152–62. The ALJ found that Nicole suffered from the severe impairments of paroxysmal supraventricular tachycardia ("PSVT"), panic/anxiety disorder, and asthma. R. 154. The ALJ further found that Nicole retained the RFC to perform a range of medium work, but she is restricted to lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and/or walking up to six hours in an eight-hour period, and sitting for six hours in an eight-hour period. R. 156. The ALJ found that

---

[3] Nicole filed for SSI in January 2013; therefore the relevant period for her SSI claim begins in February 2013. See 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. . . . [W]e cannot pay you for the month in which your application is filed or any months before that month.").

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Nicole can frequently balance, kneel, crawl, stoop, crouch, and climb ramps and stairs. Id. The ALJ explained that Nicole should avoid moderate exposure to extreme temperatures, excess humidity, pulmonary irritants, concentrated exposures to hazardous machinery, working at unprotected heights, working on vibrating surfaces, and climbing ladders, ropes, and scaffolds. Id. The ALJ limited Nicole to only occasional interaction with the general public. Id.

The ALJ determined that Nicole could return to her past relevant work as a warehouse worker. R. 160–61. Additionally, the ALJ determined that Nicole could perform other jobs that exist in significant numbers in the national economy, such as packer, laundry worker, or inspector grader. R. 162. Thus, the ALJ concluded that Nicole was not disabled. Id.

Nicole appealed the ALJ's decision to the Appeals Council, but her request for review was denied. R. 1–4. This appeal followed.

## **ANALYSIS**

Nicole challenges the ALJ's decision on three grounds, arguing that the ALJ: (1) failed to adequately account for her mental impairments in the RFC; (2) failed to perform a function-by-function analysis of her physical impairments when developing her RFC; and (3) improperly discounted her "credibility."

Nicole asserts that the mental limitation set forth in the RFC of only occasional interaction with the general public does not adequately account for her moderate difficulties in social functioning as a result of her severe anxiety. Pl. Br. Summ. J. at p. 21. I agree that the ALJ's decision does not adequately explain how the RFC accommodates Nicole's moderate impairment with social functioning, and thus, should be remanded to the Commissioner for further consideration.

4

The records before the court reflect that in October 2012 Michael B. Priest, M.D., determined that Nicole's anxiety was well-controlled with Buspar. R. 382. In May 2013, Nicole reported to Dr. Priest that she stopped taking Buspar and that her anxiety was consequently uncontrolled. R. 461. Dr. Priest prescribed Ativan for anxiety, and encouraged Nicole to engage in healthy diet, exercise, and social networking. R. 464. In November 2013, Shannon Stanley, N.P., prescribed Lorazepam for Nicole's anxiety after Nicole was found to have anxiety disorder. R. 557, 559.

Nicole saw Victor Bell, M.D., in July 2014 and was diagnosed with unspecified anxiety. R. 527. Dr. Bell continued Nicole's prescriptions for Lorazepam and Venlafaxine. R. 528. In January 2015, Nicole returned to Dr. Bell, complaining of anxiety and panic attacks. R. 568–70. Dr. Bell conducted a depression screen and found that Nicole (1) has trouble falling asleep, staying asleep, or sleeping too much; (2) often feels tired or has little energy; and (3) has poor appetite or overeating. R. 568. Dr. Bell concluded that Nicole suffered from minimal depression and assessed a panic attack. R. 568–69. Dr. Bell continued Lorazepam and Venlafaxine. R. 569.

Nicole returned to Dr. Bell in August 2015, reporting increased anxiety, more frequent panic attacks, and irritable mood. R. 580. Dr. Bell explained that Nicole's anxiety, bipolar disorder, and panic disorder were "not well controlled," and he restricted her from any employment or training for six months. R. 575. Dr. Bell explained that Nicole's primary diagnoses were panic disorder and bipolar disorder. Id. Dr. Bell stopped Lorazepam and prescribed Clonazepam. R. 581.

In November 2015, Dr. Bell explained that Nicole's anxiety was "doing well and without complaints," that Clonazepam works well, and that she denies racing thoughts, insomnia,

5

hypersexuality, or other risky behaviors. R. 577. Dr. Bell diagnosed generalized anxiety disorder, stopped Venlafaxine, started Sertraline, and continued Clonazepam. R. 578.

Nicole saw Katrina Lewis, LPC, in December 2015, March 2016, and April 2016 for counseling. R. 55, 637, 639. At each appointment, Nicole was positive for mood swings, mild depression, anxiety, and stressors and was diagnosed with unspecified mood [affective] disorder, panic disorder with agoraphobia, and generalized anxiety disorder. R. 56, 637–40.

On July 12, 2013, state agency physician Alan D. Entin, Ph.D., reviewed Nicole's records and determined that she had a mild impairment with activities of daily living and maintaining concentration, persistence or pace, and no impairment with social functioning. R. 209.  On April 7, 2014, state agency physician Bryce Phillips, Psy.D., reviewed Nicole's records on reconsideration and agreed with Dr. Entin's findings. R. 221.

Based on the above evidence, the ALJ determined that Nicole had mild restriction with activities of daily living, mild to moderate difficulties with social functioning, and no difficulties with concentration, persistence or pace. R. 155. With regard to social functioning the ALJ stated,

> The claimant testified that she does not go shopping because she gets overwhelmed and is unable to focus on what is around her.  However, in a visit to Dr. Bell in August 2015 her anxiety was not well controlled, but by November 2015, her anxiety was doing well without complaints and her clonazepam was reportedly working well (Exhibits 9F and 10F).

R. 155.

In step four of his analysis, the ALJ reviewed Nicole's testimony, the medical evidence and the opinion evidence in detail. R. 157–59. The ALJ reviewed Dr. Bell's finding in August 2015 that Nicole could not participate in employment and training activities in any capacity for six months due to her panic disorder and bipolar disorder. R. 159. The ALJ also noted Dr. Bell's finding that Nicole's anxiety and panic disorders were not well controlled at that time. Id.

6

However, the ALJ also noted that Nicole's records reflect that her anxiety was doing well, she had no complaints and Clonazepam was working well. Id.

The ALJ gave Dr. Bell's August 2015 opinion that Nicole could not participate in employment and training activities in any capacity for six months little weight, finding that it was "not consistent with the medical evidence, the objective clinical findings, or the record as a whole. Furthermore, Dr. Bell's opinion is conclusory in nature and does not contain any functional limitations." R. 159.

The ALJ also reviewed the state agency physician opinions that Nicole's alleged mental impairments were not severe and that she had no limitation with social functioning. R. 159. The ALJ then stated, "[h]owever, the undersigned gives the claimant the benefit of the doubt and finds that the claimant's alleged anxiety is severe and she is limited to only occasional interaction with the general public." Id.

Nicole argues that the RFC set forth by the ALJ failed to properly account for her moderate limitations with social functioning and does not satisfy the assessment required by SSR 96-8P. Specifically, Nicole contends that the ALJ failed to provide an adequate explanation as to why her severe anxiety and its moderate effect on her social functioning would limit only her interaction with the general public, and would not limit her ability to interact with co-workers and supervisors.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878 at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence

7

(e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150 at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972 at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Further, in Mascio v. Colvin, the Fourth Circuit clarified the ALJ's duty of explanation to adequately review the evidence and explain the disability decision. 780 F.3d at 636. The ALJ has the responsibility to address the evidence of record that supports his conclusions, and ensure that the hypothetical presented to the vocational expert includes all of the limitations set forth in the RFC. See Panna v. Colvin, No. 1:15cv229, 2015 WL 5714403, at *3 (W.D.N.C. Aug. 31, 2015) (remanding because "the ALJ failed to address [the claimant's] limitations in social functioning or explain why these limitations in social functioning did not translate to work related limitations in Plaintiff's RFC" like what is required by Mascio in concentration, persistence, or pace cases); see also Fauber v. Colvin, No. 6:15-CV-16, 2016 WL 8736904, at *5 (W.D. Va. Aug. 12, 2016) (applying Mascio to a plaintiff's claim that the ALJ failed to account for his moderate limitations in social functioning in the RFC).

Here, the ALJ's decision-making process with regard to Nicole's social functioning limitations is not clear. The ALJ found that Nicole had mild to moderate limitations with social functioning at step two of his decision. In step four, the ALJ gave little weight to Dr. Bell's August 2015 opinion that Nicole was unable to participate in any employment activities, based

8

on more recent records reflecting that Nicole's anxiety was well controlled. However, the ALJ also gave Nicole "the benefit of the doubt," and found that her alleged anxiety is severe. The ALJ then restricted Nicole to occasional interaction with the general public, without any explanation for how that restriction adequately accommodated Nicole's severe anxiety. The ALJ did not address why Nicole required restrictions as to the general public, but did not require any restrictions on interaction with co-workers and supervisors. Overall, the ALJ failed to explain how or why the limitation in the RFC of occasional interaction with the general public adequately accommodated Nicole's social functioning impairments.

The ALJ has a duty of explanation. The Fourth Circuit clarified that the ALJ meets this duty when the ALJ provides "a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which 'build[s] an accurate and logical bridge from the evidence to [its] conclusion.'" Neville v. Berryhill, No. 6:16-CV-6, 2017 WL 3909735, at *4 (W.D. Va. Aug. 22, 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). The failure to make this connection means "the analysis is incomplete and precludes meaningful review." Monroe, 826 F.3d at 190. Here, the ALJ failed to construct a logical bridge connecting the record with the limitations he crafted in Nicole's mental RFC. Although the ALJ's findings at step two and four may not require additional limitations in Nicole's RFC, the ALJ must at least provide a sufficient explanation in the decision to allow this Court to conduct a meaningful review of the RFC determination. See Panna, 2015 WL 5714403 at *3. Because I cannot meaningfully review the ALJ's mental RFC determination without such a connection, remand is warranted.[5]

---

[5] Nicole asserts additional grounds for remand in her motion for summary judgment; alleging that the ALJ did not appropriately accommodate her severe physical impairments and did not properly assess her subjective allegations. Upon remand, the ALJ should also consider those issues when determining Nicole's RFC.

9

## **RECOMMENDED DISPOSITION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence. In this case, the ALJ failed to satisfy her duty of explanation, and meaningful judicial review is impossible. For the foregoing reasons, I recommend **GRANTING** Nicole's Motion for Summary Judgment, **DENYING** the Commissioner's Motion for Summary Judgment, and **REMANDING** this matter for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 20, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge